UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

February 2, 2015

LETTER TO COUNSEL

RE: *William E. Burger v. Commissioner, Social Security Administration*;
Civil No. SAG-14-1345

Dear Counsel:

On April 21, 2014, Plaintiff William E. Burger petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 11, 13). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

Mr. Burger filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on April 25, 2011, and April 26, 2011, respectively. (Tr. 62-63, 204-12). He alleged a disability onset date of June 10, 2008, for both claims. (Tr. 204, 206). His claims were denied initially and on reconsideration. (Tr. 143-47, 151-54). A hearing was held on February 12, 2013, before an Administrative Law Judge ("ALJ"). (Tr. 26-61). Following the hearing, the ALJ determined that Mr. Burger was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 7-20). The Appeals Council denied Mr. Burger's request for review, (Tr. 1-4), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Burger suffered from the severe impairments of degenerative disc disease (cervical), degenerative joint disease (left shoulder), mood disorder, post-traumatic stress disorder ("PTSD"), borderline intellectual functioning ("BIF"), and "fibromyalgia like symptoms." (Tr. 12). Despite these impairments, the ALJ determined that Mr. Burger retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the additional limitation that he can do work that occasionally requires balancing, stooping, kneeling, crouching, crawling, and climbing (except never requires the use of ladders, ropes, and scaffolds). Because of his mental impairments, he can

      perform jobs consisting of unskilled, routine and repetitive tasks, with only occasional interaction with the public and co-workers.

(Tr. 14). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Burger could perform jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. (Tr. 19-20).

      Mr. Burger raises four primary arguments on appeal: (1) that the ALJ should have assigned "controlling weight" to the opinion of his treating physician, Dr. Scheirer; (2) that even if he is capable of performing light work, the ALJ erred in determining the additional exertional and non-exertional limitations caused by his impairments; (3) that the ALJ erred by finding Mr. Burger's complaints about his pain not entirely credible; and (4) that the ALJ erred by failing to consider that he became a "person closely approaching advanced age," rather than a "younger individual," during the period of time relevant to the disability determination. Each argument lacks merit and is addressed below.

      First, Mr. Burger argues that the ALJ should have assigned "controlling weight" to Dr. Scheirer's opinions that Mr. Burger is limited to sedentary work and that his symptoms frequently interfere with his attention and concentration, which would preclude any work at a competitive level. Pl. Mem. 15-19. He claims that the ALJ did not provide substantial evidence to support his assignment of "little weight" to the opinions of Dr. Scheirer, who is his treating physician. The Fourth Circuit set forth parameters for evaluating medical opinions of treating physicians in *Craig*, 76 F.3d at 590, which were later refined by amendments to 20 C.F.R. §§ 404.1527 and 416.927. *See Pitman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001). When a medical opinion is from a "treating source," it is given controlling weight only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If a treating source's medical opinion is not assigned controlling weight, however, in determining the weight to give the opinion, the ALJ should consider: (1) the length of the treatment relationship and its nature and extent; (2) the supportability of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the source is a specialist; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). In this case, the ALJ found that Dr. Scheirer's opinion was not entitled to controlling weight, and that it was instead was entitled to "little weight," because it was inconsistent with other evidence in Mr. Burger's record, including: x-rays of the thoracic, lumbar, and cervical spines, which were shown to be normal; Mr. Burger's activities of daily living; and his consultative examination, which indicated "no reduction in strength in upper and lower extremities and full range of motion." (Tr. 18).

      Mr. Burger argues that the November 2012 x-rays cited by the ALJ misrepresent "the great weight of medical record evidence," and are inadequate to establish that Dr. Scheirer's opinions are inconsistent with the substantial evidence in Mr. Burger's case record. Pl. Mem. 16-17; *see* (Tr. 561-64). In support of his argument, Mr. Burger cites to two MRIs from

September 2008,[1] which indicated degeneration and stenosis, shoulder lesions and arthrosis, and radiculopathy, as well as the fact that he received narcotic pain management. *Id.*; *see* (Tr. 367-68, 371-72, 479-89). However, from his discussion of the evidence, it is apparent that the ALJ considered those MRIs and Dr. Fox's pain management treatment. (Tr. 15-16). Mr. Burger's argument essentially asks this Court to re-weigh the evidence and substitute its judgment for that of the ALJ, which would exceed the scope of this Court's authority. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Notably, Dr. Scheirer's opinions were rendered in October 2011 and January 2013, both of which are closer in date to the more recent x-rays from November 2012 than the MRIs from September 2008. Accordingly, I cannot conclude that the "great weight of medical record evidence," contradicts the ALJ's determination that Dr. Scheirer's opinions were undermined by the "normal" results of the November 2012 x-rays.

Mr. Burger also claims that the cited inconsistencies between Dr. Scheirer's opinions and (1) Mr. Burger's activities of daily living and (2) the results of his consultative examination were not proper grounds for the ALJ's rejection of Dr. Scheirer's opinions. Pl. Mem. 17-18. His argument confuses the analysis of whether an opinion is entitled to controlling weight with the analysis of how much weight an opinion should be accorded when it is not entitled to controlling weight. *Compare* 20 C.F.R. §§ 404.1527, 416.927, *with* SSR 96-2p.[2] As stated above, in determining the weight to give the opinion of a treating physician whose opinion is not entitled to controlling weight, the ALJ may consider the opinion's consistency with the record as a whole, as well as any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Accordingly, I find that the ALJ provided substantial evidence in support of his evaluation of Dr. Scheirer's opinions.

Next, Mr. Burger argues that, even if he is capable of performing light work, the ALJ erred in determining the additional exertional and non-exertional limitations caused by his impairments. Specifically, he claims that his physical impairments would impact his ability to lift and carry items, and that his mental impairments would prevent him from remaining on task more than eighty percent of the time. Pl. Mem. 19-21. However, it is clear from the ALJ's opinion that he considered Mr. Burger's ability to lift and carry items and his ability to remain on

---

[1] Mr. Burger states that he "received three MRI's [sic] in 2008 by three different physicians," and "narcotic pain management for over two years." Pl. Mem. 17. However, the record reveals two MRIs dated September 18, 2008, one of which was later reviewed by a third physician in December 2008, and pain management treatment for one year, from September 2010 to September 2011. (Tr. 367-68, 371-72, 479-89).

[2] In support of his argument, Mr. Burger cites only to Social Security Ruling 96-2p, which sets forth the Social Security Administration's policy on when controlling weight must be given to medical opinions from treating sources. *See* SSR 96-2p, 1996 WL 374188 (July 2, 1996). Although Social Security Rulings do not carry the "force and effect of the law or regulations," *see Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984), they are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). Moreover, "they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass v. Chater*, 65 F.3d 1200, 1204 n. 3 (4th Cir. 1995). Mr. Burger's arguments, however, largely misconstrue the scope and requirements of SSR 96-2p. Under the ruling, a finding that a physician's opinion is inconsistent with the other substantial evidence in a claimant's case record is adequate to support a determination that the opinion is not entitled to controlling weight. SSR 96-2p at *4. Accordingly, contrary to Mr. Burger's contentions, SSR 96-2p did not require the ALJ to make any additional findings to determine that Dr. Scheirer's opinions were not entitled to controlling weight.

task. *See* (Tr. 15) ("He conveyed he can lift 20-30 pounds for any length of time."); (Tr. 17) ("Short-term memory problems were not evident . . . but his ability to learn novel information appeared impacted."). Moreover, Mr. Burger has not explained why the limitation to light work is inadequate to accommodate any difficulty he has lifting and carrying items, nor has he shown how the limitation to unskilled, routine, and repetitive tasks is inadequate to accommodate any difficulty he has remaining on task. I thus find that the ALJ supported the exertional and non-exertional limitations in his RFC assessment with substantial evidence.

Mr. Burger next claims that the ALJ erred in assessing the credibility of his statements about the impact of his pain. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints. *Craig*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects her ability to work." *Id.* at 595. In this case, the ALJ found that Mr. Burger's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (Tr. 17). However, the ALJ discredited Mr. Burger's claims about the intensity, persistence, and limiting effects of his symptoms, finding them inconsistent with the evidence of record. *Id.* In support of his determination, the ALJ cited a history of "fairly conservative treatment," x-rays showing mild and normal findings, a negative fibromyalgia tender point examination, the lack of clinical evidence of inflammatory arthritis, and Mr. Burger's daily activities. (Tr. 17-18).

Mr. Burger contends that the ALJ should not have relied on the fact that Mr. Burger's treatment was "fairly conservative," claiming that the record demonstrates that his failure to receive the treatment necessary for his impairments was a result of his lack of insurance. Pl. Mem. 22. However, a conservative course of treatment is a consideration distinguishable from both a failure to seek treatment and a failure to receive recommended treatment. Here, the ALJ plainly referred to the conservative nature of the treatment recommended by Mr. Burger's physicians on the occasions that he sought care for his impairments. Mr. Burger has not established how his lack of insurance impacted the treatment recommended by his physicians.

Mr. Burger further claims that the ALJ erred by determining that Mr. Burger's fibromyalgia complaints were not credible due to a negative tender point examination on June 14, 2011, citing a positive tender point examination on December 14, 2011. Pl. Mem. 22-23; c*ompare* (Tr. 503), *with* (Tr. 505). At the subsequent examination, however, Mr. Burger was not diagnosed with fibromyalgia, and his counsel further testified that, as of the hearing date, he had not been so diagnosed. (Tr. 29, 505). Although Mr. Burger may well experience widespread pain similar to that experienced by sufferers of fibromyalgia, he has not been diagnosed with the disease, and he has not pointed to evidence that other disorders that could cause such pain have been excluded. *See* SSR 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012) (describing the necessary medical evidence to establish that a claimant's fibromyalgia is a severe medically determinable impairment, which requires (1) a history of widespread pain, (2) at least eleven positive tender points on physical examination, and (3) evidence that other disorders that could

cause the symptoms or signs were excluded). Accordingly, I cannot determine that the ALJ erred by declining to credit fully Mr. Burger's complaints of fibromyalgia.

Mr. Burger also argues that the ALJ misconstrued his testimony about his daily activities. Pl. Mem. 23. He concedes that he testified that he was capable of the activities cited by the ALJ, but he contends that he also testified that those activities were "limited to brief spurts and required rest periods." *Id.* (citing (Tr. 36)). However, Mr. Burger has not explained how the functional limitations included in the ALJ's RFC assessment fail to accommodate the limitations supported by his testimony about his daily activities. I find that the ALJ provided substantial evidence in support of his determination that Mr. Burger's claims about the intensity, persistence, and limiting effects of his pain were not entirely credible.

Finally, Mr. Burger claims that the ALJ erred by failing to consider that he became a "person closely approaching advanced age," rather than a "younger individual," during the period of time relevant to his disability determination.[3] Had the ALJ determined that Mr. Burger was capable of only sedentary work, that classification might have rendered him disabled under the Medical Vocational Guidelines ("the Grids"), depending on the transferability of his previous work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, Appx. 2 §§ 201.12-201.16. However, for the reasons discussed above, the ALJ provided substantial evidence in support of his determination that Mr. Burger was capable of a limited range of light work. Mr. Burger's argument is thus without merit. The Grids do not direct a finding of disability for a person limited to light work who is closely approaching advanced age with a high school education, regardless of the transferability of previous work experience. *See Id.* §§ 202.13-202.15. Accordingly, any error in the ALJ's failure to consider the fact that Mr. Burger became a "person closely approaching advanced age" during the relevant time period was harmless.

For the reasons set forth herein, Mr. Burger's Motion for Summary Judgment (ECF No. 11) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 13) is GRANTED. The clerk is directed to CLOSE this case.

---

[3] Mr. Burger's argument asserts that he became a "person closely approaching advanced age" subsequent to the hearing, incorrectly stating that a "person closely approaching advanced age" is defined as a person between 51 and 59 years of age. Pl. Mem. 23. However, pursuant to Social Security regulations, a "person closely approaching advanced age," is defined as a person between 50 and 54 years of age. 20 C.F.R. §§ 404.1563(d), 416.963(d). Accordingly, contrary to Mr. Burger's argument, he became a "person closely approaching advanced age" on September 14, 2012, *prior to* the hearing. The distinction, however, is irrelevant because, as discussed above, the ALJ appropriately determined that Mr. Burger was capable of a limited range of light work.

*William E. Burger v. Commissioner, Social Security Administration*
Civil No. SAG-14-1345
February 2, 2015
Page 6

    Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                                                 Sincerely yours,

                                                         /s/

                                               Stephanie A. Gallagher
                                             United States Magistrate Judge